**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

PAMELA DEE PERRY,

                 Plaintiff,

v.                              CIVIL ACTION NO.   2:15-cv-01145

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Pamela D. Perry's Complaint seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner").   (ECF No. 1.)   On February 17, 2015, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation ("PF&R").   (ECF No. 3.) On January 5, 2016, the Clerk transferred the referral of this action to United States Magistrate Judge Omar J. Aboulhosn.   (ECF No. 11.)   Magistrate Judge Aboulhosn filed his PF&R, (ECF No. 12), on February 1, 2016, recommending that this Court deny Plaintiff's request for judgment on the pleadings, (ECF No.8), grant the Commissioner's request for judgment on the pleadings, (ECF No. 9), affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.   Plaintiff timely filed objections to the PF&R on February 10, 2016 (the "Objections").   (ECF No. 13.)

1

For the reasons that follow, the Court **OVERRULES** the Objections, (*id*.), **ADOPTS** the PF&R, (ECF No. 12), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 8), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## I.    *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length.   In short, Plaintiff filed an application for disability insurance benefits on May 26, 2011, alleging disability as of December 15, 2009.[1]   (ECF No. 6–2 at 13.)   The application was initially denied on September 20, 2011, (ECF No. 6–4 at 4–6), and upon reconsideration on December 20, 2011, (*id*. at 10–12).

A hearing was held before Administrative Law Judge I. Kay Harrington (the "ALJ") on July 12, 2013.   (ECF No. 6–2 at 28–64.)   On August 21, 2013, the ALJ issued an unfavorable decision.[2]   (*Id*. at 10–27.)   The Appeals Council denied review of the ALJ's decision on December 2, 2014.   (*Id*. at 2–6.)   Thereafter, on January 28, 2015, Plaintiff filed her Complaint in this Court.   (ECF No. 2.)

---

[1] Plaintiff has more recently amended her alleged onset date to October 1, 2010.   (*See* ECF No. 6–2 at 35–37.)

[2] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in in substantial gainful activity since October 10, 2010, the amended alleged onset date."   (ECF No. 6–2 at 15.)   At step two, the ALJ found that Plaintiff has the following severe physical impairments: hyperlipidemia and osteoarthritis of the hands. (*Id*. at 15–16).   The ALJ also found, through application of the special technique for assessing mental impairments, that Plaintiff has the following non-severe medically determinable mental impairments: major depressive disorder and generalized anxiety disorder.   (*Id*. at 17–19.)   At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   (*Id*. at 19.)   The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)," with certain listed limitations. (*Id*. at 19–22.)   At step four, the ALJ found that Plaintiff was "capable of performing past work as an administrative assistant," and accordingly that Plaintiff was not disabled.   (*Id*. at 22.)   The ALJ relied on the testimony of a vocational expert in making this determination.   (*Id*.)

## II.      Standard of Review

### A.      Review of the PF&R

This Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.      Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."   *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").   Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).   "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."   *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v.*

3

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).   "In reviewing for substantial evidence, [the court should] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."   *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).   If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision.   *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act."   *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)).   "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3]   *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4).   The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.   *See Bowen v.*

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work.   By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability.   The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987).   If a decision regarding disability can be made at any step of the process, however, the inquiry ceases.   *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III.     Discussion

Plaintiff raises two objections to the findings and recommendations in Magistrate Judge Aboulhosn's PF&R.   First, Plaintiff asserts that the Magistrate Judge erred in finding that that the ALJ complied with 20 C.F.R. § 404.1527 in evaluating the medical opinion of Amy Guthrie, M.A., a State agency psychological consultative examiner.   (ECF No. 13 at 2–4.)   Second, Plaintiff argues that Magistrate Judge Aboulhosn erred in finding that the ALJ properly considered both Plaintiff's severe and non-severe impairments in her residual functional capacity ("RFC") assessment.   (*Id.* at 4–6.)   Plaintiff contends that the ALJ failed to appropriately consider the effects of Plaintiff's depression and anxiety, mental impairments that the ALJ classified as medically determinable but not severe at steps two and three.   Importantly, Plaintiff "has not challenged the ALJ's finding that her mental impairments were not severe."   (*Id.* at 4.)   Moreover, while Plaintiff claims that the ALJ's failure to consider her non-severe impairments at the RFC stage resulted in "an incomplete controlling hypothetical question to the VE, which elicited flawed VE testimony that cannot serve as substantial evidence to support the ALJ's conclusion of not disabled at steps four and five," (*id.* at 5), Plaintiff does not independently challenge the hypothetical question or the ALJ's step four determination.   Rather, she only alleges that the question and the determination were not supported by substantial evidence because they were based on a flawed RFC assessment which failed to take Plaintiff's non-severe mental impairments into consideration.   (*See id.* at 5–6.)

5

Plaintiff's objections both relate to the ALJ's assessment of the functional limitations imposed by Plaintiff's mental impairments. As such, a brief discussion of the procedure by which the Social Security Administration ("SSA") assesses mental impairments is necessary before the Court addresses Plaintiff's specific objections. Ultimately, for the reasons discussed below, the Court determines that the ALJ's determinations regarding the limiting effect of Plaintiff's mental impairments, including her assessment of Ms. Guthrie's opinion on that issue, were supported by substantial evidence and accordingly **OVERRULES** both of Plaintiff's objections to the PF&R.

## A.       Background on SSA Treatment of Mental Impairments

When a claimant asserts a mental impairment as a basis for disability, the SSA is required to employ a "special technique," unique to mental impairments, to determine severity. *See* 20 C.F.R. § 404.1520a(a) ("[W]hen we evaluate the severity of mental impairments . . . we must follow a special technique at each level in the administrative review process."). Pursuant to that technique, an ALJ "considers four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1520a and 416.920a). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Id*. (citing 20 C.F.R. §§ 404.1520a(4) and 416.920a(4)).

This "special technique" is employed at steps two and three of the sequential evaluation to determine the severity of a claimant's mental impairments. *See Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 652–53 (6th Cir. 2009).

It is a "complex and highly individualized process" which must take into account all relevant evidence bearing on the claimant's mental condition.  20 C.F.R. § 404.1520a(c)(1).   In this context, relevant evidence includes "clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id*.

In general, the SSA first determines whether a claimed impairment bears sufficient evidentiary support to be considered a medically determinable impairment.   *Id*. § 1520a(b)(1).   If the impairment is medically determinable, the next step is to assess the degree of functional limitation it creates with reference to the four functional areas listed in 20 C.F.R. § 404.1520a(c)(3) (as noted above, activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation).   The SSA ranks the degree of limitation present in the first three functional areas on a five-point scale ranging from "none" to "extreme," and ranks the fourth area based on number of episodes.   *Id*. § 404.1520a(c)(4).   Based on its findings with respect to each functional activity, the SSA will determine whether a claimant's medically determinable mental impairments are severe.   *See id*. § 404.1520a(d).   "[I]f the ALJ finds that the claimant has a severe mental impairment that neither meets nor equals a listed mental disorder, then the ALJ assesses the claimant's residual function."   *Miller v. Colvin*, No. 2:13-cv-31251, 2015 WL 917772, at *3 (S.D. W. Va. Mar. 3, 2015) (citing 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3)).   However, a ranking of either "none" or "mild" in the first three areas coupled with no episodes of decompensation will "generally" lead the SSA to "conclude that [an] impairment(s) is not severe,

unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

As noted above, the special psychiatric review technique is used to determine severity and is not in itself an assessment of RFC. Soc. Sec. Admin., SSR 96-8P, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (July 2, 1996); *see also McPherson v. Astrue*, 605 F. Supp. 2d 744, 757 (S.D. W. Va. 2009) ("Assessing the effect of mental impairments on RFC requires a much more precise analysis of a claimant's abilities than is necessary when determining the degree of the impairments' severity at step two of the sequential evaluation."); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (noting that the special technique procedures "do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis" (citation omitted)). However, the findings an SSA adjudicator makes pursuant to the special technique are nonetheless relevant to her ultimate RFC determination, as the adjudicator must "assess the claimant's mental RFC by translating the findings that were developed through the evaluation of the [special technique] factors into specific work-related limitations." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *13 (W.D.N.C. Nov. 18, 2010) (citing 20 C.F.R. § 404.1520a(c)(3) and SSR 96-8p) *report and recommendation adopted*, Civil No. 1:09cv364, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011). The less functional limitation the ALJ determines a given mental impairment to impose on an individual's ability to work at step two, the less will be the need for the ALJ to consider such impairments in the ultimate RFC assessment. *See Strempel v. Astrue*, 299 F. App'x 434, 439 (5th Cir. 2008) (upholding RFC determination that did not expressly account for any mental impairment where evidence in record suggested that the claimant did not have a mental condition

8

that imposed more than minimal limitations); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (noting, in response to a challenge to an ALJ's step five hypothetical based solely on the fact that the hypothetical was based on an incomplete RFC, that where an ALJ finds that a limitation in concentration, persistence, or pace does not affect a claimant's ability to work, it would be "appropriate to exclude [that limitation] from the hypothetical tendered to the vocational expert").

**B.     Objection to RFC Determination**

In this case, the ALJ applied the special technique described above and determined that Plaintiff's depression and anxiety were medically determinable mental impairments, but ultimately concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere." (ECF No. 6–2 at 18.)   As noted above, Plaintiff did not challenge that severity determination either in her briefing before the Magistrate Judge or in her objections to the PF&R.   She does however, challenge her RFC assessment to the extent that "notwithstanding the ALJ's finding that [Plaintiff's] mental impairments were non-severe, the ALJ was still required to consider the effects of these non-severe impairments when making her RFC assessment."   (ECF No. 13 at 4.) Because of the critical importance of the RFC assessment to the ultimate disability determination, the Court will address that objection first.

RFC is a determination of a claimant's capabilities notwithstanding her impairments, which occurs between steps three and four of the five-step sequential evaluation of disability claims.   *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8P (noting that "RFC is only an issue at steps 4 and 5

9

of the sequential evaluation process"). An ALJ's RFC assessment focuses on the effects—limitations, restrictions, symptoms, etc.—of a claimant's medically determinable impairments. *Id*. (noting that the RFC assessment considers "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms"). It is a broad-ranging inquiry that focuses not on the isolated effect of individual impairments, but instead on "'the combined effect of all the individual's impairments . . . without regard to whether any such impairment if considered separately' would be sufficiently severe." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (quoting 42 U.S.C. § 423(d)(2)(c)); *see also Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity."). Accordingly, the limiting effect of an impairment must be considered as part of an individual's RFC whether or not that impairment is classified as "severe" at step two of the sequential evaluation. 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

In any case involving a medical impairment severe enough to survive step two, an ALJ is required to consider all of a claimant's impairments, whether severe or non-severe, when determining RFC. *See id*. §§ 404.1545(e), 404.1523; *see also Singleton v. Astrue*, C/A No. 9:08-1892-CMC-BM, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009) (noting, in the context of finding a step two severity determination error harmless, that if a plaintiff "makes a threshold showing of

*any* 'severe' impairment, the ALJ continues with the sequential evaluation process and considers all impairments, *both severe and nonsevere*" (citation omitted)).

Importantly, however, although some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work. *See* 20 C.F.R. § 404.1545(a)(1) (defining RFC as a person's ability to function despite the existence of "physical and mental limitations that affect what [that person] can do in a work setting"); *Presnell v. Colvin*, No. 1:12-CV-299-FDW, 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013) (emphasizing that "[c]onsideration does not require favorable consideration" and rejecting the plaintiff's argument that the ALJ had failed to consider his non-severe mental impairments where the ALJ "determined in step three that Plaintiff's mental impairments were non-severe, and as a result, concluded that they caused little or no functional limitation which would impact the ALJ's analysis of [the plaintiff's] RFC"); *cf. Wells*, 727 F.3d at 1065 (noting that a finding of non-severity at step two "alone" would not relieve the ALJ of his duty to consider the limitations imposed by a non-severe impairment in the RFC analysis, but finding ALJ discussion inadequate only because his "specific conclusions" that such non-severe impairments caused no functional limitations were not supported by substantial evidence).

Perhaps most importantly on the facts of the instant case, an ALJ "need only include in the RFC those limitations which he finds credible." *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)); *see also* 20 C.F.R. § 404.1529(c)(4) (noting that the SSA will consider a claimant's reported symptoms, but will only find that they actually diminish RFC "to the extent that [the claimant's]

alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence"). As the Fourth Circuit has noted, an ALJ is required to consider a claimant's pain and other reported symptoms associated with a medical impairment as part of her RFC analysis. *See Mascio*, 780 F.3d at 639.

All relevant evidence, medical, observational, and subjective, will be considered in determining RFC. *See* 20 C.F.R. § 404.1545(a)(3). Though the ALJ considers each of the medical opinions, the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner. *Id*. § 404.1527(d)(2); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The reviewing court's sole responsibility when assessing an ALJ's determination of a claimant's RFC, like it is with respect to review of all ALJ determinations, is to determine whether the ALJ's conclusion is rational and based on substantial evidence. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

In this case, contrary to Plaintiff's assertion, the ALJ extensively detailed Plaintiff's impairments, severe and non-severe, both as part of the step two "special technique" procedure and again at the RFC stage. As part of the step two procedure for determining severity, the ALJ noted that at the administrative hearing Plaintiff had testified to a history of depression and anxiety since the mid-1990s. (ECF No. 6–2 at 16.) In assessing that testimony, the ALJ reviewed the treatment records from two physicians, Dr. Kapil Rawal and Dr. Gary Tucker, each of whom had treated the plaintiff and diagnosed her with depression within a seven-month interval in 2009 and 2010. (*Id*. at 16–17.) Dr. Rawal prescribed an anti-depressant to help alleviate the symptoms of Plaintiff's depression. (*Id*.) The ALJ further noted that upon returning to West Virginia, Plaintiff received some mental health treatment and continued to receive prescriptions for

12

psychotropic anti-depressant medication, both from a mental health clinic and, later, from a primary care provider.  (*Id*. at 17.)   In addition to reviewing the records of these treating physicians, the ALJ also consulted the report of Amy Guthrie, M.A., a state agency psychologist who examined Plaintiff as part of the disability determination process and again diagnosed Plaintiff with major depressive disorder.   (*Id*.)

Finally, the ALJ considered the psychiatric review technique forms ("PRTFs") submitted by state agency psychologists Dr. Jeffrey Boggess, Ph.D., and Dr. Debra Lilly, Ph.D., experts in assessing mental health impairments for purposes of making disability determinations.   These medical professionals did not personally examine Plaintiff, but their notes indicate a review of the relevant medical and treatment records pertaining to Plaintiff's depression and anxiety.   (*See* ECF No. 6–12 (Dr. Boggess PRTF) at 18–32; ECF No. 6–13 (Dr. Lilly PRTF) at 2–16.)   Dr. Boggess diagnosed Plaintiff with major depressive disorder and "Anxiety nos" and noted that these medically determinable impairments caused no functional limitation in daily living or social functioning and only mild limitations in maintaining concentration, persistence, or pace; he further noted that Plaintiff demonstrated no episodes of decompensation.  (ECF No. 6–12 at 28.)   Dr. Lilly's assessment contained a similar diagnosis of major depression, in addition to a cognitive disorder diagnosis, and while generally finding that these impairments imposed mild rather than no limitations, found no episodes of decompensation and ultimately declared the impairments non-severe.   (ECF No. 6–13 at 12–14.)

Taking all of these medial opinions and treatment records into account, and comparing them to Plaintiff's reports of engaging in extensive daily activities and social events, the ALJ determined that Plaintiff's "medically determinable mental impairments of major depressive

13

disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (ECF No. 6–2 at 17.)   The ALJ reached that conclusion by assessing each of the four required special technique categories.   With respect to daily activities, the ALJ highlighted Plaintiff's reports of "working 15 hours a week, watching television, reading, taking care of personal hygiene, cleaning, doing laundry, ironing, driving a car, shopping for groceries two times a week, paying bills, managing finances, walking, gardening, eating out two to three times a week, and attending church."  (*Id*. at 18.)   Several of these varied daily activities also reflected Plaintiff's capacity to socially function, including the fact that she was able to work, attend church, shop, and eat out, and Plaintiff further demonstrated her social functioning by reporting that she sometimes visited and received visits from relatives and friends.   (*Id*.) Moreover, in addition to documenting the findings of Dr. Boggess and Dr. Lilly as to the relevant factors, the ALJ analyzed Ms. Guthrie's findings as to each category and compared them to Plaintiff's own reports.   Ms. Guthrie's assessment revealed that Plaintiff's mental functioning was generally "coherent" and "within normal limits," with the exception of recent memory, which Ms. Guthrie noted was "markedly deficient."[4]   (ECF No. 6–12 at 13–14.)   In no functional category did Ms. Guthrie report that Plaintiff's limitations were anything more than mild.

After conducting this careful analysis, the ALJ concluded Plaintiff's mental impairments were not severe and that they imposed at most minimal limitations on her ability to work.   The

---

[4] Plaintiff highlights the fact that Ms. Guthrie further noted Plaintiff was "slow to respond to some of the questions" and "appeared to have some mental confusion," (ECF No. 6–12 at 13), and argues that the ALJ's failure to address such "conflicting evidence" related to RFC prevents this Court from conducting a meaningful review and mandates remand.  (ECF No. 13 at 5.)  The ALJ is under no obligation to restate every piece of evidence contained in the medical record in her decisions, and Plaintiff's cited testimony hardly "conflicts" with those pieces of Ms. Guthrie's testimony the ALJ did recount, including that Plaintiff's recent memory was "markedly deficient," and that, notwithstanding Plaintiff's mild confusion, her thought process was "generally coherent."   (ECF No 6–12 at 13.)

ALJ recognized, however, that this severity determination was not an RFC assessment and, before beginning that RFC assessment, took care to note that "the following residual capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." (*Id*. at 19.)  As described, that "degree of limitation" was determined by the ALJ to be minimal.  Nonetheless, the ALJ's RFC assessment once again detailed Plaintiff's entire treatment record, including her mental health record.  It ultimately included no limitation to account for Plaintiff's non-severe mental health impairments, however, based on the ALJ's assessment of the medical evidence and her conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible."  (*Id*. at 20.)  Plaintiff does not challenge this credibility determination, and the record reflects that the overall RFC determination was made upon consideration of Plaintiff's mental impairments and supported by substantial evidence.

As a basis for her RFC determination, the ALJ again detailed Plaintiff's broad array of daily activities, her ability to work, and her capacity to engage in social interactions.  (*Id*. at 20–21.)  Moreover, the ALJ acknowledged Plaintiff's history of receiving mental health treatment, but concluded that the treatment had been "essentially routine and/or conservative in nature" and "generally effective in controlling [her] symptoms."  (*Id*. at 20.)  As for the Plaintiff's history of being prescribed anti-depressants to control her symptoms, the ALJ determined that such prescriptions had been "relatively effective" in controlling symptoms, and only manifested "mild" side effects which would not interfere with Plaintiff's ability to work.  (*Id*. at 21.)  Further, the ALJ referenced Plaintiff's global assessment of functioning (GAF) score of 65, which indicates mild impairment.  (*Id*. at 22.)  Although recognizing that such scores are generally "of limited

evidentiary value," the ALJ accorded it weight because its conclusion of mild impairment was consistent with both Plaintiff's reports of "robust" activities of daily living and the report of Dr. Boggess and Dr. Lilly.   The fact that the ALJ considered this measure of mental limitation further demonstrates that she considered the effects of Plaintiff's non-severe mental impairments when assessing RFC.

It is true that the ALJ did not again detail the mental health treatment records or medical opinions in the RFC portion of the analysis.   But the ALJ's extensive discussion of that record evidence at step two, combined with her further conclusion at the RFC stage that Plaintiff's subjective assessment of the symptoms resulting from her mental impairments was inconsistent with that medical evidence and the Plaintiff's own self-reports of daily living, is more than sufficient to demonstrate that the ALJ considered Plaintiff's non-severe impairments when assessing RFC.   *See Kins v. Comm'r of Soc. Sec.*, Civil Action No. 3:14-CV-86, 2015 WL 1246286, at *23–24 (N.D. W. Va. Mar. 17, 2015) (finding that the ALJ properly considered a non-severe impairment, despite not explicitly addressing it in the RFC section of the decision, where the ALJ elsewhere "made specific findings and provided an explanation for her conclusion that [the non-severe impairment] resulted in only minimal functional limitations"); *Brooks v. Astrue*, Civil Action No. 5:10cv00104, 2012 WL 1022309, at 11–12 (W.D. Va. Mar. 26, 2012) (finding ALJ consideration of non-severe impairments sufficient, despite not including any limitations to account for such impairments in the RFC, where the ALJ expressly considered the relevant medical evidence and compared them to plaintiff's subjective complaints about the limiting effects of her impairments, but "simply did not find any additional limitations were warranted in light of these impairments" (citation omitted)); *cf. Allen v. Comm'r of Soc. Sec.*, Action No. 2:09cv265, 2010

16

WL 1142031, at *15 (E.D. Va. Feb. 24, 2010) (finding that ALJ failed to properly consider a claimant's non-severe depression where "no where" in the entire assessment did the ALJ "consider any medical evidence of [the claimant's] depression or the psychological evaluations that indicate the impact that her depression has on her ability to function") *report and recommendation adopted*, Action No. 2:09cv265, 2010 WL 1169951 (E.D. Va. Mar. 22, 2010).

The ALJ properly considered all of Plaintiff's medically determinable impairments and reasonably concluded that the mental impairments imposed no functional limitations on Plaintiff's ability to work.   Her RFC assessment in light of all of Plaintiff's limitations is supported by substantial evidence, as were her subsequent hypothetical question and step four conclusion that Plaintiff could return to past relevant work, which were based on that RFC assessment and not independently challenged by the plaintiff.   Accordingly, the Court **OVERRULES** Plaintiff's second objection.[5]

---

[5] Plaintiff argued in her briefing that an appropriate assessment of her RFC should have prohibited a finding that she could return to past work as an administrative assistant at step four of the sequential evaluation.  She further argued that, had the ALJ made such a finding at step four, "Medical-Vocational Rule 202.06 would have directed a finding of disability."   (ECF No. 8 at 9.)   The Magistrate Judge upheld the ALJ's RFC assessment and step four determination, but went on to address Plaintiff's argument and conclude that even if Plaintiff was unable to do past work, "Rule 202.06 is inapplicable because it requires that the previous work experience not have transferrable skills." (ECF No. 12 at 22.)   Plaintiff now objects to that determination, arguing that "had the ALJ properly considered Perry's non-severe mental impairments and limited her to unskilled work, Perry's past work would have been precluded and any skills she may have acquired through that work would be nullified, resulting in a finding of disability directed by Rule 202.06."   (ECF No. 13 at 6.)

    Here, the Court determines that the ALJ properly considered Plaintiff's non-severe mental impairments when assessing RFC and that the ALJ's step four finding of no disability was supported by substantial evidence. Accordingly, it need not consider whether Plaintiff would be disabled under the Medical-Vocational Rules, which are only implicated once a case reaches step five of the sequential evaluation.  *See Thompson v. Astrue*, 442 F. App'x 804, 807 (4th Cir. 2011) (noting that the Medical-Vocational Rules were not an issue in a case that terminated at step four of the sequential evaluation); *Sawyer v. Astrue*, 775 F. Supp. 2d 829, 834 n.3 (E.D.N.C. 2011) ("The Medical Vocational Guidelines . . . place claimants with severe exertional impairments *who can no longer perform past work* into grid categories according to their residual functional capacity, age, education and work experience, and dictates a conclusion of disabled or not disabled." (emphasis added) (citing 20 C.F.R. § 404.1520(f))).

17

## C.    Evaluation of Medical Opinions

Plaintiff's other objection is that Magistrate Judge Aboulhosn erred in finding that the ALJ complied with relevant Social Security regulations in evaluating the medical opinion of Amy Guthrie, M.A., a state agency consultative examiner who performed a psychological evaluation of the Plaintiff.[6]

In making its disability determination, the Social Security Administration "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence [it receives]."  20 C.F.R. § 404.1527(b).   Unless the ALJ gives a treating source's opinion controlling weight, the ALJ takes into account the following factors in weighing any

---

[6] In support of this objection, Plaintiff argues, among other things, that the Magistrate Judge erred in the following way:

> To find the ALJ's decision was supported by substantial evidence, the Magistrate Judge has supplied *post hoc* rationale that the ALJ did not provide . . . Although the ALJ did not engage in any evaluation of Ms. Guthrie's opinions in her decision, the Magistrate Judge has supplied a full analysis of the evidence to put forth his own conclusion that Ms. Guthrie's observations and diagnoses were of no consequence to the ALJ's findings and ultimate decision in light of the treatment notes from Dr. Rawal and the medical opinions of two non-examining State agency medical consultants.

(ECF No. 13 at 2–3.)  Plaintiff does not cite any case law in support of this argument.   (*See id.*)
In the context of reviewing agency actions, "courts may not accept appellate counsel's post hoc rationalizations for agency action; . . . an agency's discretionary order [may] be upheld, if at all, on the same basis articulated in the order by the agency itself."  *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–169 (1962).   "While [a court] may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned."  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citations omitted).
Insofar as this principle of judicial review of agency action is implicated at all in the present case, Plaintiff's "post hoc" argument is clearly misplaced.   In reviewing the disability determination of the Commissioner, the Magistrate Judge's task in the PF&R was to review whether substantial evidence supported the decision.   With respect to review of the ALJ's evaluation of Ms. Guthrie's opinion, the PF&R did exactly that: it summarized the ALJ's consideration of Ms. Guthrie's opinion and detailed the substantial evidence in support of the ALJ's evaluation.   (*See* ECF No. 12 at 19–20.)  Such consideration of the record supporting an ALJ decision does not raise any post hoc concerns.
In any case, whether or not the Magistrate Judge engaged in impermissible post hoc reasoning, this Court is obligated to conduct a de novo review to those portions of the PF&R to which objections are timely addressed. Accordingly, because the Court must review for itself the propriety of the ALJ's consideration of Ms. Guthrie's opinion, without reference to the Magistrate Judge's conclusion on that issue, Plaintiff's "post hoc" argument provides no independent basis for this Court to disturb the decision of the Commissioner.

medical opinion: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of any treatment relationship; (3) the support of the source's opinion afforded by the medical evidence in the record; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is rendered by a specialist in his or her area of specialty; and (6) any other relevant factors.  *Id*. § 404.1527(c).  "Although an ALJ must consider these factors when weighing the evidence, he is under no mandate to conduct a factor-by-factor analysis."  *Jones v. Comm'r of Soc. Sec.*, Civil Action No. 1:10CV185, 2012 WL 1085658, at *12 (N.D. W. Va. Mar. 30, 2012) (citing *Pinson v. McMahon*, Civil Action No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009)); *see also Hardy v. Colvin*, Civil Action No. 2:13-cv-20749, 2014 WL 4929464, at *2 (S.D. W. Va. Sept. 30, 2014) ("[T]he regulations require the ALJ to consider the six factors, but do not demand that the ALJ explicitly discuss each of the factors.").

Generally, more weight is given to examining sources than to sources who do not examine. 20 C.F.R. § 404.1527(c)(1).  Similarly, more weight is given to treating sources than to examining sources.  *Id*. § 404.1527(c)(2).  However, "there is no regulatory directive that the Commissioner always give good reasons for the weight given to an examining source like there is with a treating source."  *Starcher v. Colvin*, Civil Action No. 1:12–01444, 2013 WL 5504494, at *6 (S.D. W. Va. Oct. 2, 2013) (citing 20 C.F.R. § 404.1527(c)(1)–(2)).  Ultimately, although an ALJ's duty of explanation is lesser with respect to a non-treating source than with respect to a treating physician, that explanation must nonetheless "be sufficiently clear so that a court may meaningfully review his weighing of the opinion."  *Miller*, 2015 WL 917772, at *18 (citations omitted); *see also Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 95 (4th Cir. 2003) ("[T]he ALJ must explain the weight

accorded to non-treating sources.").   "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion."   *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (citations omitted).

Amy Guthrie, a licensed psychologist, examined Plaintiff one time, on September 14, 2011, at the request of the state agency tasked with determining her initial eligibility for disability benefits.   (*See* ECF No. 6–2 at 17; ECF No. 6–12 at 11–17.)   As a result of that examination, which was primarily designed to assess Plaintiff's mental health, Ms. Guthrie "provided a comprehensive psychological report, which included a clinical interview, mental status examination and diagnoses."   (ECF No. 8 (Pl.'s Br. in Supp. of Mot. for J. on the Pleadings) at 11.)   Ms. Guthrie's report details Plaintiff's medical record and history of mental health treatment, noting that she had already been diagnosed with both major depressive disorder and an anxiety disorder and that she was continuing to receive outpatient treatment from a mental health provider. (ECF No. 6–12 at 12.)   At the assessment, Plaintiff noted several symptoms stemming from the diagnosed mental health impairments listed above.   Specifically, she noted the occurrence of "crying spells" multiple times per week, varied appetite, fluctuations in weight, and "excessive[]" worrying.   (*Id*.)   Primarily on the basis of Plaintiff's self-reported symptoms, Ms. Guthrie diagnosed her with major depressive disorder.   Ms. Guthrie also diagnosed Plaintiff with "Cognitive Disorder, NOS" on the basis of her reports of mental confusion and impairment.   (*Id*. at 14–15.)

With respect to the mental status examination in particular, Ms. Guthrie noted that Plaintiff's measurable characteristics, including her thought process, thought content,

psychomotor behavior, immediate memory, remote memory, and persistence, were generally coherent and "within normal limits," although she was slow to answer some questions and demonstrated some degree of mental confusion.   (*Id*. at 13–14.)   In addition, her immediate memory was characterized as "markedly deficient," while her concentration and social functioning were described as "mildly deficient."   (*Id*. at 14.)   Her pace of completing tasks was designated "mildly slow."   (*Id*.)   In other words, although Plaintiff was diagnosed with major depressive disorder and a cognitive disorder, those disorders did not impose any limitations on Plaintiff's ability to function (save for its effect on her immediate memory) that were characterized by Ms. Guthrie as anything other than "mild."   (*See id*. at 13–15.)

Consideration of the ALJ decision as a whole reveals that the ALJ accorded Ms. Guthrie's opinion due consideration in reaching her conclusion that Plaintiff's mental health impairments imposed minimal functional limitations.   Ms. Guthrie's conclusions are generally consistent with the ALJ's conclusion, detailed above, that Plaintiff's mental impairments resulted in no more than minimal limitations on her ability to perform work functions.   She diagnosed Plaintiff with major depressive disorder, a diagnosis that is undisputed in the record and confirmed by several other medical sources reviewed by the ALJ,[7] and her one finding of more than mild limitation—that Plaintiff had a marked deficiency in recent memory—was expressly mentioned and therefore considered by the ALJ, (*see* ECF No. 6–2 at 17).

Further, as indicated in the above discussion of the ALJ's assessment of Plaintiff's mental impairments, the ALJ considered the effect of Plaintiff's mental impairments on four key

---

[7] Ms. Guthrie also diagnosed Plaintiff with a cognitive disorder, which the ALJ recognized and declined to credit on the basis that it was inconsistent with the diagnosis of one of Plaintiff's treating physicians, Dr. Rawal, who had concluded almost two years before Plaintiff's examination with Ms. Guthrie that Plaintiff's diagnosed post-concussion cognitive disorder had fully resolved.   (*See* ECF No 6–2 at 17; ECF No. 6–8 at 5.)

functional areas, as required by 20 C.F.R. § 404.1520a(c).   (*See id*. at 17–19.)   With respect to the fourth area, episodes of decompensation, there is no evidence in the record—in the report of Ms. Guthrie or elsewhere—that Plaintiff has ever suffered any episode of decompensation of extended duration.   The ALJ noted this in her opinion and Plaintiff does not argue otherwise.   (*Id*. at 18.)   With respect to each of the other three functional areas, the ALJ explicitly considered Ms. Guthrie's findings before making a determination.   (*Id*.)   In fact, it was based on Ms. Guthrie's conclusion that Plaintiff's concentration was mildly impaired and pace mildly slow that the ALJ concluded that Plaintiff had mild limitations in the area of concentration, persistence or pace.   (*Id*.) Moreover, when the ALJ disagreed with Ms. Guthrie as to the appropriate limitation Plaintiff's mental impairments imposed on her social functioning, she noted Ms. Guthrie's finding and pointed to contradictory evidence in the record.   (*See id*. ("… Ms. Guthrie noted the claimant's social functioning was mildly deficient . . . The claimant reported a variety of social activities in the record, such as working part-time, attending church, eating out, visiting relatives and friends, receiving visits from relatives and friends, and shopping two to three times a week.").

Thus, contrary to Plaintiff's assertion that the ALJ did not consider Ms. Guthrie's report beyond certain "cherry-picked excerpts" supporting her ultimate conclusion, (ECF No. 13 at 3), the ALJ engaged significantly with Ms. Guthrie's report, including the portions of that report that were arguably inconsistent with the ALJ's ultimate determination.   (*See* ECF No. 6–2 at 17 (documenting Ms. Guthrie's findings that, upon examination, Plaintiff's "mood was depressed and affect was restricted," and that her "[r]ecent memory was markedly deficient"); *id*. at 18 (acknowledging that Ms. Guthrie found Plaintiff's social functioning to be mildly deficient).)   An ALJ is not required to discuss every piece of evidence in the record, and need only discuss

"evidence that, if believed, could lead to a finding of disability." *Naylor v. Astrue*, 693 F. Supp. 2d 544, 568 (S.D. W. Va. 2010) (citations omitted). Here, the ALJ's repeated references to Ms. Guthrie's findings reveal that she considered that report and it further appears that while generally finding that report to be consistent with the rest of the record, she chose to give more weight to the findings of other medical sources which were more consistent with Plaintiff's "robust activities of daily living." (ECF No. 6–2 at 22.)

It is true, as Plaintiff argues, that the ALJ did not assign a specific weight to Ms. Guthrie's testimony or explicitly discuss the § 404.1527(c) factors. Nonetheless, it appears that the ALJ considered Ms. Guthrie's report and qualifications, evaluated the consistency of her opinion with the rest of the evidence in the record and Plaintiff's self-reported ability to function, and gave Ms. Guthrie's opinion correspondingly less weight to the extent it conflicted with the rest of the record. *See Jones*, 2012 WL 1085658, at *12 (upholding an ALJ's treatment of a treating source's opinion where the ALJ's explanation "allowed a subsequent reviewer to follow his line of reasoning," there was "sufficient persuasive contradictory evidence in the record to rebut [the source's] opinion," and "the ALJ provided an adequate path for subsequent reviewers to follow how he weighed the evidence in relation to his findings"); *Miller*, 2015 WL 917772, at *20 (affirming an ALJ's decision to give a non-treating physician's medical opinion little weight, even where the ALJ did not specifically address the § 404.1527(d) factors, where court was able to "infer from the explanation provided by the ALJ that he used the appropriate factors in weighing" the opinion at issue).

The Court finds that the ALJ followed the applicable regulations when evaluating Ms. Guthrie's opinion and that substantial evidence supports this determination.  Accordingly, the Court **OVERRULES** Plaintiff's first objection.

### IV.    *Conclusion*

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF No. 13), **ADOPTS** the PF&R, (ECF No. 12), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 8), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE